Let me welcome you to our court. Before I begin, again, Judge Black and I wanted to introduce to you the visiting judge who is sitting with us this morning, Judge Jane Rastani. She has sat with our court many times, and we are delighted to have her. She sat with the United States Court of International Trade for many years. She was appointed to that position by President Reagan in 1983. She served as the chief judge of that court as well from 2003 to 2010, and we are delighted to have her help us with our work once again. Second, just brief observation for those of you who may not be familiar with our lighting system. You will note that there is a green light, which means, obviously, you can go, an amber light, which is a two-minute warning, and the red light means your time is up. We would be much appreciative if you could bring your remarks to a conclusion when the red light goes on. It doesn't mean you have to stop in mid-sentence, but if you could wrap it up, we would be much appreciative. Third and last observation, as you proceed with your oral arguments, you can safely assume we have read not just the briefs and the record excerpts, but in many of the instances, we have had a chance to review the record as well. So feel free to go right to the heart of the argument. You don't have a whole lot of time, and you don't have to spend a whole lot of it if you don't want to, just as prefatory matter about things that we've had a chance to fully review. With that, we welcome you again to our court, and we'll begin with the first case, which is the United States v. Marlon Miller. Good morning, and may it please the Court. Without publicity, all other checks are insufficient. In comparison of publicity, all other checks are of small account. That quote comes from the Supreme Court's opinion in Richmond Newspapers v. Virginia, where it held that the press and the public have the First Amendment right to attend criminal trials. And that right is coextensive with the Defendant's Sixth Amendment right to a public trial. Before I go into the merits of that issue, I'd like to address the question of whether or not that issue is preserved. The government has argued that that issue is not preserved, but in sealed document 254, Mr. Miller moved to unseal the OPR reports and moved for the production of Brady materials or an alternative for dismissal of the indictment. But I thought he, I thought the claim was that it was Brady material. There was never a First Amendment or Sixth Amendment claim raised. He, I think that he argued that the record should be unsealed in this motion in document 254. Yeah, but how did he tell the Court that it was a First Amendment or Sixth Amendment issue? I'm not sure that he specified necessarily the exact basis for the argument of which amendment it was. And so, but I think that's reflected in this Court's decision in the United States v. Ignatiac, which doesn't really go into the basis or the constitutional pinnings for the issue or for the doctrine. It just says that when you're sealing a case or sealing documents or closing a courtroom, that there's a test that you have to meet. And so So, in my review of the record, I could only find where he argued that he should have a First Amendment right to access. And further, that he was arguing that the investigative report should be unsealed. He wasn't addressing any other reports that he requested be unsealed before the District Court. Am I correct in my review of the record? So, in the sealed document 254, he moves to unseal the OPR reports. So, he moves to unseal all of those documents. And in another sealed filing, I don't have the number for this. It was filed on December the 28th, 2015. It's a motion where he acknowledges that he's compelled to file his motions under seal. But he, I think, disputes the basis for that sealing and says that it is, the government is attempting to insulate itself from embarrassment from the inevitable exposure of misconduct and criminal conduct on the part of one or more of its agents. And so, and between those two motions, I think that he is articulating or objecting and saying that there's insufficient basis for sealing these documents. So, we would argue at that point that the issue is preserved. And as the court knows, if the issue is preserved, the issue is structural error and therefore is cause for automatic reversal if there was error. Tell me your best case from either the circuit or the Supreme Court that states what you just said. United States v. Ignaziak is, I think, a great case for us in terms of outlining the test and why the documents here should not have been sealed. In terms of the structural error, I think those cases are Weaver v. Massachusetts, Waller v. Georgia, and Presley v. Georgia. And those cases say that this is a structural error because it goes to the framework of the trial in which the trial is conducted and doesn't go to the issue of whether or not Mr. Miller would have been convicted. And that's why it's structural error and therefore leads to automatic reversal. And were those sealed records issues in all those cases you decided? Ignaziak is a sealed records issue. I know, but the cases you decided for the principle that this was structural error, were they sealed records cases? I think Waller and Presley v. Georgia are about the sealing of courtrooms. But this court and the Supreme Court have recognized that those same rights, the First Amendment rights, the Sixth Amendment rights, go or extend towards the sealing of records. And certainly that's the case here where there's an entire category of information that was not available to the public. So a member of the public could look at the docket and would never know that this was an issue, that there was any sort of problem or government misconduct at issue in this case. And so when you seal not just the investigative reports, but all of the pleadings and shut the courtroom, people were kicked out of the courtroom. So when you have all of those factors, I don't think there's any open question as to whether or not the right to a public trial and the First Amendment rights extend to cover that. That's pretty clear that they do. I take it with respect to the sealed materials, you had the opportunity to review them, albeit under, in a limited way. That is to say, you couldn't take them out of the U.S. Attorney's Office. You reviewed them there, but you had access at least to discern whether there was something there that you wanted to use. And if so, how? And that you were able to flesh out with the court. Do I have that right? I should be clear that neither I nor my co-counsel represented Mr. Miller at trial. When I say you, I just mean counsel way back when. Yes. So he had the opportunity to review the materials. I think because of the trial deadline, it was maybe compressed, but he certainly was taking handwritten notes as to those documents and was not allowed to have a copy of them. When copies were requested, the district court denied the request for copies. And therefore, he was pretty hamstrung in his ability to use them. Maybe I got this wrong from the record, but I thought I recalled that one of the problems was, even though he was allowed to take notes, he didn't identify which documents to the judge, particular documents that he thought he needed that he didn't get. And I thought that was one of the problems for the judge. He specifically requested a series of documents from the government in a letter. And I am not sure that that letter was ever put on the docket. But in the letter, he identified all the different pieces of materials that he wanted, and that was discussed at a pretrial conference. That is to say there was a detailed explication by number, and all of that was fleshed out directly with the district court. Do I have that right? I think he argued at the pretrial conference why he wanted this information. And that goes to our second issue, which is that the district court's understanding of what he was incredibly limited and did not reflect the argument that he was actually making at the pretrial conferences. So at the pretrial conferences, he made several comments where he was explaining that he wanted this information because it was relevant, not necessarily the overarching investigation, but the information contained in those reports regarding CS3 and Nita Griffin-Parks. That information was entirely relevant to his defense because she's the one who set up the deal that's at issue in this case. And there was evidence of communication between her and April Palmer. But you know what's fascinating? When I reviewed the thing here was that in no way did the district court preclude the defense from calling the witness, if you wanted to call the witness. And a tactical decision was made that I wouldn't call them, no doubt because there were collateral consequences of other stuff that might well have come in. And that was sort of a decision by counsel. Was it not a strategic call that better nothing than everything? Did I misapprehend that? I think I have two responses to that, Your Honor. One is that it wasn't just that he was unwilling to face the collateral consequences of the search that may come in. It was that it was impossible for someone to call witnesses that would be hostile to him at trial and ask them to provide information that they do not want to provide in open court without any of the documents to show them, to refresh their recollection, to impeach them. Well, if the decision had been made, though, it seems to me that may not accurately state the record, and maybe I don't have it right, but it seems to me if defense counsel has said to the judge, I propose to call Jones as a witness. Here's why. I think it's germane and relevant. I've got a Sixth Amendment right to confront and cross-examine and present evidence on my own behalf. And this is what I want to do. You may rule subsequently that this, that, or the other thing comes in. I'll take it up when it happens. I'll argue it. And if I lose, I'm happy to live with it. But I need access to A, B, and C so that I can properly interrogate a witness that I want to call. I want those documents, Judge. I'm calling Jones. None of that happened. May I respond? I see I'm under attack. Please. No, no, no. Okay. I'd very much like your help on this issue. Okay. In the pretrial conference on December the 29th of 2015, the counsel for Mr. Miller made clear that there were communications or that her belief was that there were ongoing communications between Ms. Griffin-Parks and Agent Cromer. And she made that clear, and she says, I would like to have impeachment material for Anita Griffin-Parks when she is a witness at this trial or some prior consistent statements if that's what they turn out to be. That's what I want. And then she goes on to say, this woman has had a raft of arrests, Judge, and very few prosecutions. No, no. I'm familiar with the call, but my question is more pointed. Did counsel ever say, Judge, I'm calling her and I need it? Or did counsel decide for strategic reasons not to call her? I think counsel did decide not to call her, but if she had been given these records, I think that she would have called her. Did she say that to the judge? Did she say, Judge, if I had access to A, B, C, D, and E, then I will call her as a witness because it will make it, even though I've reviewed them in camera under sealed conditions, I want to use them in a public forum to beat up the witness, to impeach her credibility. I didn't read that. I'm not sure that counsel ever said, I intend to call her and I want these records for that purpose. But I think that is the overarching point of her conversation or of the colloquy at both the pretrial conference from December 29th and from January the 5th, is that she thinks that they need to be a witness. I think she says in this pretrial conference, when she is a witness at this trial, which we believe she needs to be a witness. And so she's making clear that this is the reason for her request to have copies of the documents and why they are being requested to be unsealed. Can I ask one more question? Sure. The Griffin and the documents that might go with Griffin, is the only purpose for those the entrapment defense? No, not at all. So what are the other purposes for this? So the defense that we articulated in issue two, it goes much further beyond the entrapment defense. It shows that the documents that are at issue and that she was requesting and that should have been unsealed are relevant because they show that Anita Parks Griffin had prior, multiple prior arrests for drug distribution deals, managed to escape those prosecution for any of those arrests, including, but her husband, Willie Parks, her husband in this case, they were all arrested and charged while she managed to escape prosecution. And the reason for that, we would submit, is that she has some sort of ongoing relationship with Agent Cromer. That is... I'm just trying to figure out, what's the defense? The defense is a mere presence defense, and it shows that he was the fall guy, basically. Our client, Mr. Miller, was the fall guy for this exchange because he was not, I think the records are clear that he was not the one setting it up, that Ms. Parks Griffin was the one who orchestrated the deal. But you would not prevent it from doing any of that? I don't think that it was practical to do that when you don't have any of the documents. Well, you had seen the documents and you never went to the judge and said, I need him in order to conduct a direct examination of Griffin, and by God, I want to call her. I believe that's what counsel was doing at the... You think she said that? You think she said that as simply and directly as that? I don't know that she said it as directly as that. Because if she did, I'd be much appreciative if you could point me to where I would find that in the record. Well, I think it's the quote that I indicated earlier, where she says that we believe she needs to be a witness, and that that's why they are asking for that information. And there's a quote from the January the 5th... Counsel. Sorry. I'm trying to find the answer to the question. They... Counsel for the defense was going to call her, made a decision not to call her. Why was that decision made? Is it in the record or do we have to fathom it from looking at different parts of the record? And guess why the decision was made? I don't think that the record speaks to that directly, but I think it's clear that it's for two reasons. One is because she didn't have the documents necessary to refresh her recollection or to impeach her. And to support that, you go to the earlier request saying, I want to call her, I plan to call her. Yes. And she never said, I need those records to cross-examine the witness. Yes or no? I think she says that I need these as a prior inconsistent statement or as a prior consistent statement. It says, I would like to have some impeachment material for Anita Griffin-Parks when she is a witness at this trial, which we believe she needs to be a witness, or some prior consistent statements if that's what they turn out to be. That's what I want. So I think she's saying, I would like to call. I plan on calling Ms. Griffin-Parks. I need the materials in order to question her. And without them, it will be impossible to call her. I think it all also ties into the third issue where the government changed, completely changed its position prior to trial on the search evidence. So we would argue that those are the two reasons why they weren't called. But none of these issues that we've raised are ineffective assistance of counsel claims where strategic decisions are relevant, are part of the analysis. And with that, I will, I know my time is up. Thank you. Good morning. Good morning. May it please the Court. My name is B.J. Pack, and I represent the appellee in this case, the United States. I think Judge Rustani and Judge Marcus is right on point. For this Court's consideration, the first question the Court should answer is, was the error that's raised on appeal preserved below? The answer is a respectfully no. The procedural posture is the appeal, the decision of the district court that Mr. Miller is seeking to review is the denial of the motion to unseal the documents in this case. As a ground, it's articulated in the motion itself, the only ground that she's raising was Brady violation, which is a due process case. At the pre-trial conference, the judge specifically asked Mr. Miller's counsel, what is it exactly that you want me to review? Is Brady the only ground that you're actually asking me to consider? And counsel actually answered yes. So there was no mention of the First Amendment right to access, neither the common law right to access to judicial records. As a result, this Court should review the decision to deny the motion to disclose based on a plain error standard, which obviously you're very familiar with. Mr. Miller cannot meet any of the four elements of that test. There was no error in this case because the district court applied the proper standard by looking at the evidence and applied a determination that this was actually a discovery matter. This Court's decision in Chicago Tribune case and U.S. v. Anderson case made clear that discovery matters generally not within the purview of the First Amendment or the common law right to that are filed in conjunction with something that requires a judicial decision on the merits is only when that test is triggered. I take it you disagree with her statement that failure to get access to documents that should have been unsealed is a structural error? We disagree, Your Honor. Once again, there is no right to discovery material that does not relate to a decision on the merits. Mr. Miller has cited Waller v. Georgia. Waller v. Georgia was a part access, an open proceeding case, in addition to documents that's filed within it. In that case, there was a wiretap material under Georgia law that obtained. The prosecutor asked to seal the courtroom and the material as a result of sensitive information of unindicted co-conspirators whose voice was recorded in that case. Even the Waller case realized even if you don't have to show prejudice to get a new trial, you recognize that the proper remedy is not a reversal of the entire conviction, but merely a remand to get a suppression hearing to determine whether or not that had impact. Waller doesn't mean, even if you find that there is a structural error in the case, it doesn't mean that Mr. Miller gets a brand new trial. It just means that there's a suppression hearing that the court needs to determine whether or not it impacted his substantial rights for any consideration of future motions. So, no, it did not apply in this case. The problem, I think, Judge Marcus and Judge Black have pointed out in this case is that Mr. Miller failed to specify exactly what the court should have done. With respect to the hindering of the presentation of the defense, the record doesn't show that what Mr. Miller would have done as Judge Marcus aptly pointed out. Mr. Miller's counsel could have pointed out, Judge, I am making a strategic decision not to call Ms. Griffin to the stand because of your ruling or, Judge, I cannot, I am going to call Ms. Griffin, but I am not going to call her because I don't have access to the documents. What is the point? Did counsel for the defense ever say in words of substance, if you give me one, two, three, and four by way of documentary evidence, I am calling Griffin or I need it in order to effectively examine Griffin? Judge Marcus Counsel never stated that, that the record words of substance. There is nothing in the record, particularly in the December 29, 2015 pretrial conference, that the court would somehow prevent her from doing that, in addition to actually reviewing the materials in camera to determine whether or not the items are under seal relate to the entrapment defense that Mr. Miller tried to raise. The district court looked at it, even afterwards, in an order entered on January 6, following in 2016, said I do not want to prevent counsel from actually raising that defense. We do not see any materials that are under seal, in my review, that would justify an entrapment defense. As a result, but he still did not prevent Mr. Miller's counsel from arguing that, arguing mere presence. What Mr. Miller's counsel did at trial is made a strategic decision to argue that instead of Ms. Griffin being the mastermind in the case, that it took an approach that Mr. Beebe was the mastermind in the case. In effect, Mr. Miller did raise the defense of mere presence in the case. There is absolutely no prejudice on their plain error standard that they can meet that third prong, and government respectfully argues that there was not error at all in this case. The record, I haven't read the closing argument of counsel. Did counsel for the defense articulate the theory at that in the closing argument or the opening statement? Its closing argument, Mr. Miller's counsel did raise that Mr. Beebe was the mastermind, and then Mr. Miller was not a mastermind or a participant in any material way. Ms. Griffin, although was mentioned throughout the trial, was never called to testify. Mr. Beebe, who was a cooperating co-conspirator in the case, did testify, and did testify as to Ms. Griffin's participation in the drug conspiracy. To the extent that Mr. Miller argues that lack of information prevented him from presenting a defense, and even though Mr. Miller's counsel did not call Ms. Griffin, he was entitled to impeach that evidence because Ms. Griffin was brought up at trial. Unfortunately for Mr. Miller, he did not articulate to the judge that I need these documents to, in fact, impeach Ms. Griffin. By way of note, even if the materials, the OPR investigative report, which by the way, is under seal under OPR 1 to page 44, is the investigative report, interview of Ms. Griffin. Even if that was the case, just because a report is not a substantive piece of evidence, the information contained in the report may be relevant for impeachment purposes to the extent that they're trying to test the failure to refresh memory. We're assuming, in a hypothetical sense, that the witness would be lacking in memory to have that document available. Again, Mr. Miller's counsel could have done that, and in fact, there was an actual prejudice or need for the document. She could have asked for the documents again, but unfortunately, did not decide not to do that, and so the district court did not have an opportunity actually make the ruling that Mr. Miller's counsel is asking the appellate court to reverse. Thanks very much. Thank you. Your Honors, in the motion to unseal the OPR reports, document 254, counsel for Mr. Miller specifically said, Mr. Miller intends to call the subject witnesses, even if the government declines to call them, so that she made clear at that point that she did intend to call Ms. Griffin, and that was part of her justification for the request for the document. Right, but she said the problem that I'm having, and you can help me with it, is a lot of things were said. There were a series of hearings. There were a series of discussions. It's sort of like a rolling decision-making process. So if you look, for example, at a later hearing held on January 5th, 2016, the court and defense counsel had a lengthy discussion outside the presence of the government about the potential evidentiary effects of delving into Griffin and her role. The judge said he could not hypothetically rule at that time about how pursuing this point could open the door to other evidence, but offered the view that if indeed Griffin were called and that was your call, the defendant's call, then it seemed to the judge that the other stuff would come in as well. And the defense counsel at one point says, I understand the risks, I run, I truly do. We've been agonizing over what to do in this case. It seemed to me when you read the whole record, the defendant had a difficult call to make, and the call boiled down to this. If they called Griffin, they ran the risk that other stuff would come in, and the other stuff was more damaging than the benefit they thought would inure to them from calling Griffin, and they made the tactical call. They knew what was in the record because they reviewed it, and never said, Judge, my decision turns on being able to undermine and cross-examine and impeach with these materials. I need them. That never happened. And that's the trouble that I'm having here because it looks to me like you had a district court judge that was very receptive to the concern and the problem that the defendant had raised. What am I missing here? I think there are a couple of issues. First, that we've raised that the government should not have been able to change its position to threaten to bring in the additional search material. And so that's a third separate issue that we're raising. Even if the court disagrees with us that this issue has... I don't see the threat to bring in that material. There's the judge saying to the defense, it might have to come in. The government said at the beginning that it didn't intend to use that search for any purpose, but it also didn't say, oh, if Ms. Griffin testifies, we won't use anything. They said not for impeachment, but I didn't understand. It didn't say impeachment of Ms. Griffin at the beginning. And at this point, it's the judge saying... I think that's in response to what the government was saying. At the initial, I believe the December 29th hearing, the government is the one who brought it up and said, and judge, if we're going to go into this, then we're going to bring in this additional search material. And so that's when the judge says, okay, well, if we get into this, then you're allowed to do that. And so that is the issues that we've raised. I'd like to address the even if this issue isn't preserved, even if Mr. Miller's trial counsel did not sufficiently articulate a First Amendment basis or the Sixth Amendment basis. Let me just ask you one question. You talked about the motion to unseal the reports where the witness was referred to, the documents were requested in order to cross-examine the witness. Are you talking about the December 23rd, 2015 motion? I believe that it was filed on December the 23rd. It's... We're talking about the same motion. Okay. A motion to unseal OPR reports for production of Brady material. Yeah. Okay. So even if this issue wasn't preserved, even if she didn't articulate the basis for why she wanted the records or why they shouldn't be unsealed, then this court still reviews that issue for her. And the Supreme Court in U.S. v. Marcus, 560 U.S. 258, has held that structural errors may suffice to show that the issue or that the error affected the defendant's substantial rights, even if it didn't affect his, the outcome of the trial. So even if the issue was not preserved, we're, I think that it's clear that it meets the plain error test under that case. Thank you. Thank you very much. We will proceed.